Case number 25-1269 from the Northern District of Iowa, United States v. Oscar Navarro-Zepeda Thank you, Your Honors, for this opportunity. On behalf of Mr. Navarro, I wanted to articulate my intent is to deal with point one of the appeal. I wanted to start first by discussing standard of review. The government states that this is an abuse of discretion standard and I must respectfully disagree. Going back to the first case dealing with 410 waivers, United States v. Young articulated that the determination of a valid or enforceable waiver of 410 is reviewed and noted by this court. I would concede that the factual determinations by the district court are for abuse of discretion, but not the ultimate question of the enforceability of the waiver. Wait, factual determinations are usually clear air. Why would it be abuse of discretion? Maybe the overall decision is abuse of discretion, but wouldn't it be clear air? I would concede to the court if that's the case. The government quoted the abuse of discretion standard, so I question myself sometimes with all of these review issues, but I think it's clear to know what review is appropriate on the determination. I wanted to start on Young because I don't, I would concede I didn't probably appropriately brief that in the detail I should have. I want to just point the court to overall, this appears to be quite a unique northern district of Iowa, DOJ-4. The reason I want to go back to Young, it's the first case on this issue, and one thing that struck out to me in preparations for today is that the court there thoroughly considered, because there's two prongs to the waiver, because there must be a full awareness to the nature of the right and what the consequence of the abandonment is. In Young, it was pretty clear that the defendant knew the consequence. I think that is the complete converse here. When you look at the factual record, nothing could be muddier than what transpired for Mr. Navarro. Well, counsel, to cut to what I think is the key to the case, the district court found the testimony of the attorney credible, and more credible than the defendant. Does that end this case? I don't think at all. The court can make, and I understand they're virtually, I think the court said, it's virtually undecidable on this appeal. I agree. But I think if you review de novo those facts, you can determine from and glean from those facts what transpired. Why? Because even taking original trial counsel's testimony as it is, he clearly misadvised Mr. Navarro. And if you look at page 8 of the court's ruling, I think the district court skims over a fact that it's clear here that Mr. Navarro was misadvised on what the consequence of this 410 waiver was. The consequence is that this would be because this is all transpiring on this telephone from the jail cell for Mr. Navarro, using a secretary to interpret, is that he also did a proffer interview right before this and signed a proffer agreement. Counsel told him, if you testify at trial inconsistently, these facts will come in against you. Well, that's not true. The 410 waiver says this is direct evidence against you, and that's ultimately what happened. So Mr. Navarro, and I wanted to point out in the context of Mr. Navarro, he's very different from every other defendant that's been before you on one of these 410 waivers. If you look at Quijado, Hall, Hahn, Young, all of them are English-speaking, educated, and for most of them had criminal justice experience. That is absent in all of the facts for Mr. Navarro. He's solely a Spanish speaker. He's never had a criminal justice case, and his attorney does this all by phone. If you look at the record, my client is pulled out of a jail cell to put into a holding cell. He never got the document, which I think if you look at the other types of defendants... What document are you talking to? The initial plea, right? In fact, if you look at what happened, when he went into that 30-minute phone call where this document was explained to him, he didn't have it, and he didn't have it Spanish or even English. So his attorney is reading this to him on the phone, and I think that's factually important because the only time he initials it is during a 7-minute encounter at the jail at a subsequent time. When I talk about a common... And it was a Spanish version of the plea agreement, right? No, it's not. I think that that is actually a clear error issue here. Wait, I thought this was from the defendant's math. No, if you look at the trial transcript, he never received the plea agreement in Spanish, and I found this in preparation for this. Does the district court say plainly that he said it to him? I thought he said it to him. The attorney might have... And here's how it transpired factually. He's in a jail. The attorney's down here at Omaha, pulls him out, and says, And this 21-page plea document then is sight-translated, allegedly, to him in 30 minutes. And I would argue to you that the importance of the in-person and the actual recitation of these documents into Spanish... Try reading that document in English to yourself. It'll take you over 30 minutes. And here, not only is it alleged that he had it read to him in 30 minutes, but that it also conveyed the substantive consequences of this waiver. And when he initialed it, that was at a later time, in a five- to six-minute meeting at the jail. And the trial record was clear that his attorney came into the jail, brought the document, and five minutes later walked out himself. That's how much time he had to contemplate the consequences of what this waiver meant. And the testimony of trial counsel was that, again, I think the emphasis here is he was misadvised. I think it's circular reasoning to say, just because the client signed the document, the fact that he didn't have it in Spanish, I think, is a consequential fact. And the trial order says that he had it in Spanish. That actually came from a clerical error in my own resistance, because I said it in my resistance that he had it in Spanish. I actually typed it and mistyped it. They said he had it. He never had it in Spanish. So Mr. Navarro has never seen this document. Did you ever call that to the court's attention, the district court's attention? Did you call your misstatement to the district court's attention? I did not because I didn't see it until I read the order, and the judge made his finding. But the testimonial record was clear from counsel. So the answer is no, you never did? I did not, after the order was issued. After you saw it, you didn't do anything? I saw it in preparations for today, to be honest with you. Oh, today? In preparations for today. But couldn't you, I mean, I suppose you could have filed a motion for reconsideration, or to correct an error or whatever. It could have been a correction of that misstatement of fact, but the testimony I thought was quite clear because trial counsel said I never gave it to him in English or Spanish. So the fact in front of the court, because my pleading is not fact. The testimony is fact, and trial counsel said I did not provide it to him in Spanish. And the only conveyance of the information was counsel's secretary providing it. And I wanted to address that issue, which is the scope and circumstances for which this all takes place. Because I would concede that some of the language says a road recitation need not comply, that the colloquy need not be conveyed. But when you look at the totality of the circumstances and how this particular plea was executed, all points to a lack of knowledge that these would be direct facts issued against him. I thought the district court made a credibility determination to go back to Judge Benton's first question, that they were very careful to convey to him that these facts could be used against him if he didn't follow through with the plea agreement. But if you look at the transcript of that hearing, counsel didn't say it that way. Counsel said he did it in the context of if you testify. That may be true if you proffer and then testify inconsistently. If you look at the totality of counsel's testimony, I think it's kind of parceling language that's not there from that testimony, because counsel told him if you testify, they would be used for impeachment, which is different than being used as direct evidence if you don't completely guilty. And I'll be short of my word on that. Thank you. You bet. Mr. White. Your case of court. Counsel. What we have here for the court is a case in which the court was convicted of four of five counts of drug trafficking and gun possession and gun, in furtherance of the drug trafficking crime. The defense has already raised, and of course spent some time on, the primary argument by the defense is that the court had incorrectly admitted stipulations by the defendant in his pretrial guilty plea that he signed prior to the guilty plea. He also signed each individual paragraph and went over that on multiple occasions with his attorney. I think that's the crux of the issue here is the court found that it was knowing and voluntarily made. I think there is a key point here to try not to equate an unorthodox, unorderly procedure by this attorney, because it was, with whether or not it was knowing and voluntary. And I think that the district court found its way through that by looking at the facts and circumstances, including the testimony of both the attorney in question, Mr. Weinstein, and the defendant himself, and then looked at the copy between the defendant and the magistrate court back at the time of the initial attempted plea on December 19th of that year. Did he receive a copy of the agreement in both English and Spanish? No. And I think the record is clear that it was read to him word by word, but it was always English written, read to the defendant in Spanish, either by his counsel when there was discussion, and there was discussion at the time of the proffer. I think that was in August, I think, the time of the October 3rd, as the court notes, when he went over the individual paragraphs. And then on November 3rd when he went over the individual paragraphs in order to have them signed by each initial. So it really depends on those – the first time when it was read over half an hour or so, and then the six – oh, never mind, six, ten minutes, whatever it was, the second time around when he initials and signs it. That's the universe. It's not what we're looking at here. There's a slight – largely, I mean, there's a seven, ten-minute, six, seven-minute pathway to go over actually signing it. He had previously discussed the prospects of a plea agreement, which the defendant said at the time of the proffer that he wanted to plead guilty, did not want to go to trial, and what to be expecting. And then there was that six, seven-minute conversation about we need to get this on file. I'll go over the rest of the details with you, but do you still want to go over this? And he signed it. Then the plea gets delayed, and they go over the details by phone with his interpreter on October 3rd in detail. And then more specifically, line by line, signatured or initialed each particular paragraph on November 3rd. Comes to the plea in December, goes through that, and the matchmaker court, I thought, did a pretty good job of trying to test him, so to speak, as to whether he really wanted to do this or not. And on numerous occasions early, he said yes, satisfied with counsel, and now you have the certified interpreter going through those things with him. And then at some point, he just reaches a stage where he won't admit the factual elements, even though he kind of sort of does when there's a break, then says basically, I want to plead guilty, but I also want to be deported. And she just says this is enough, and so we pushed it off. And there was actually a second attempt at plea with new counsel, counsel before the court here today, and that also failed, but not to the degree that it did the first time around in which the very specific procedures by which he went through those particular paragraphs and what they meant was covered. And I think at that point— Well, and then we get to the—and sort of follow up on my earlier question, then we get to the credibility finding, right, which is where the district court says yes, he actually did. I believe counsel, and counsel did read it in Spanish and go over these particular terms. And your view is that it would require us to upset the credibility finding, which makes it clear error review. Yes. I think the court looked at it and looked at the— I think the court looked at his testimony before the court at the evidentiary hearing, but also looked at his testimony or affirmation in response to questions by the magistrate court at the time of the plea and basically made findings. For example, a question by me on cross-examination said that he hadn't spoken to him with a Spanish interpreter, but he said that he did at the time of the plea in front of the magistrate court, and that he also did earlier in the evidentiary hearing upon questions by the defense counsel. So the court found contradictory statements. I'm going to use a phrase I don't often use, but it reminded me when he was going through his responses, something that Sergeant Schultz would say on that old TV show, Hogan's Heroes, I know nothing, even though clearly in that show Sergeant Schultz knew things were going on. The defendant kept saying he didn't know this, didn't know this, but when pressed at times by the magistrate court and by myself in cross-examination and in part by questions by his counsel, he did make admissions. And I think that's where the credibility finding comes into play, that the court found the defense attorney's statements as to how he went through it, not unorthodox as it was, but multiple times, and had his commitment to pleading guilty and understanding that there would be things used against him. Now, yes, he did phrase that if you testify, if you say this here and then you go to testify, that could be used to impeach you, but he also said that it will come in against you. That's in the record. So I think it was clear that it had been gone through in an unorthodox or an orderly way, but he knowingly and voluntarily waived his right in order to have that admitted against him when he failed to plead guilty after two attempts. In addition, there's a couple other issues before the court. I think that the issue on whether or not the court erred in finding that the evidence was sufficient for the 924C count. I think there was ample evidence, as the court cited from both the expert testimony, two co-operators, 33 pounds found in a location very close to an 8K AR-style rifle in various packages of large-scale drug-trafficking amounts of five pounds here, five pounds there, packaged in new ways with a digital scale and also packaging that were consistent with distribution. Finally, I think they also raised the issue of sentencing. I think the court considered the very issues that the defense raised as mitigating, considered aggravating, weighting the gun, mitigating his impoverished background and things of that nature, cited all those things. I think the defense's argument is that just simply the court didn't vary enough, but the court did vary over five years for a variety of reasons, including its own categorical disagreement with meth, purity, and mixture. So I think that the court adequately considered all those factors. Thank you. Thank you, counsel, for the argument. Go ahead. I want to take this time just to articulate one response to Mr. Wade in that anything you glean from the change of plea hearing and his desire to plead guilty I think confuses the issue of whether or not he actually knew what he was citing. Just because he said, I want to plead guilty to be deported is not the same as I did these things. Because where it broke down at the first plea colloquy is that he would not admit to the substantive facts to generate a guilty. Counsel was sworn when saying those things, right? I mean, excuse me, defendant was sworn when saying those things. Yeah, but he, again, at that colloquy, while being sworn, he still did not – he broke down when he had to admit to the facts, which he wouldn't do. So his desire to plead guilty was not articulated in this particular waiver. So I also wanted to note that because the court was asked about clear error determinations, ultimately I think the court has the facts in the record to make a de novo determination that this document was admitted in error and that the relevancy objection both there and under even – I cited in my brief under a 403 analysis would also make it inadmissible for the reason under 403. Thank you both counsel for the argument. Case number 25-1269 is submitted for decision in the court. Mr. Kievan, final testimony.